CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
HOWARD SHNEIDER (Bar No. 309843)
ISABEL BUSSARAKUM (Bar No. 295046)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Tel: 213-894-2854
Fax: 213-894-0081
Email: Howard_Shneider@fd.org
Email: Isabel_Bussarakum@fd.org

Attorneys for Defendant
MICHAEL JOSEPH PEPE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-07-00168-DSF |
| Plaintiff, | |
| v. | **Notice of Appeal** |
| MICHAEL JOSEPH PEPE, | |
| Defendant. | |

**Notice of Appeal**

Notice is hereby given that defendant Michael Joseph Pepe hereby appeals to the United States Court of Appeals for the Ninth Circuit from the district court's attached restitution order (docket no. 906, entered on April 18, 2022) and amended judgment (docket no. 909, entered on April 20, 2022), and all ancillary rulings.[1]

April 21, 2022                           Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

_/s/ Isabel Bussarakum_
HOWARD SHNEIDER
ISABEL BUSSARAKUM
Deputy Federal Public Defenders

Attorneys for Defendant

---

[1]  Pepe previously filed a notice of appeal (docket no. 874) from the original judgment (docket no. 873), resulting in Ninth Circuit Case No. 22-50024.  He then filed another notice of appeal (docket no. 882) from an order denying his motion for judgment of acquittal (docket no. 877), which was incorporated into the same pending appeal.

1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          No. CR 07-168(C)-DSF

11            Plaintiff,                 ORDER RE: RESTITUTION

12            v.

13   MICHAEL JOSEPH PEPE,

14            Defendant.

15

16        Following a retrial, Defendant Michael Joseph Pepe was convicted of two counts

17   of Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C.

18   § 2423(b), and two counts of Aggravated Sexual Abuse of a Child, in violation of 18

19   U.S.C. § 2241(c).  Two organizations seek restitution on behalf of seven victims

20   pursuant to 18 U.S.C. §§ 2248 and 3663: Hagar International (Hagar) and Agape

21   International Missions (AIM).  Based on Defendant's role in causing damages to these

22   victims, the Court awards restitution in the amounts set forth below.

23   **I.    Factual and Procedural Background**

24        Defendant was convicted in 2008 under a different statute for basically the same

25   conduct.  In 2008 and 2009, the government submitted numerous documents in support

26   of restitution including victim impact statements; statements from Hagar and AIM

27   related to guardianship, victim impact, victim treatment, and costs; and documentation

28   from the Defense Finance and Accounting Service (DFAS) regarding Defendant's

military pension.  The Court held a hearing in 2009 related to victim impact and restitution.  Present at that hearing were representatives from Hagar and AIM who addressed the Court and answered questions from the Court related to costs and the need for the victims to remain in the care of the organizations.  Defense counsel was given an opportunity to ask questions of these representatives and did not.  Final sentencing occurred nearly six years later.  Before that hearing, the government submitted an updated list of costs from Hagar and AIM.  The Court sentenced Defendant to 210 years in prison and ordered restitution to be paid to Hagar and AIM.  Defendant appealed, and the Ninth Circuit vacated his conviction and sentence without reaching the issue of restitution.

To date, the government has garnished from Defendant's military retirement payments more than $25,000, which has been applied to the original restitution order. To date, Hagar has been paid approximately $3,901.69 on behalf of victims I.T. and N.T.D., and AIM has been paid approximately $23,345.58 on behalf of victims T.C., L.K., K.S., S.S., and S.R.

Following the retrial and conviction on the new statutes, on February 14, 2022, Defendant was sentenced to 210 years in prison for his convictions.  At the parties' request, the Court deferred ruling on restitution and imposition of a fine pending further briefing and a restitution hearing.  Both sides submitted voluminous briefing.  The government has not sought restitution for any costs beyond those originally imposed by the Court in 2014 and has reduced the requested amount.

On March 14, 2022, the Court held a restitution hearing during which Don Brewster, the current Executive Director of AIM was cross-examined by defense counsel on his February 25, 2022 declaration outlining AIM's claimed expenses.[1]  In addition, Sue Hanna, who managed the finances and budget at Hagar from 2006 to 2014,

---

[1] Dkt. 880.

Case: 22-50024, 04/21/2022, ID: 12427861, DktEntry: 4, Page 5 of 25
Case 2:07-cr-00168-DSF   Document 910   Filed 04/21/22   Page 5 of 25   Page ID #:17167

Case 2:07-cr-00168-DSF   Document 906   Filed 04/18/22   Page 3 of 15   Page ID #:17133

1  presented her testimony regarding the categories of expenses included in the

2  Government's Supplemental Filing regarding Restitution filed on February 7, 2022.[2]

3  ## II.   Mandatory Restitution Under 18 U.S.C. § 2248

4  Restitution is mandatory under 18 U.S.C. § 2248 for the victims of Defendant's 18

5  U.S.C. § 2241(c) offenses without regard to Defendant's economic circumstances or any

6  other avenues of recovery by the victims.  18 U.S.C. § 2248(b)(4).

7  The jury found four victims of Defendant's Section 2241(c) offenses, all of whom

8  were under 12 years old at the time of their victimization: K.S. (Count Three), and I.T.,

9  S.S. and S.R. (Count Four).[3]  The definition of "victim" under Section 2248 includes a

10  minor victim's legal guardian.  18 U.S.C. § 2248(c).

11  ### A.   Hagar and AIM Were the Victims' Legal Guardians

12  The Court finds that during the relevant time period,[4] Hagar and AIM were the

13  legal guardians of all seven victims seeking restitution, including the four under-12

14  victims, and that each incurred costs "on behalf of" the victims in their "capacity as legal

15  guardians."[5]  Hagar and AIM accompanied the victims at the first trial and explained

16  their roles as guardians, caring for the victims and providing for their living expenses,

17  medical and psychological expenses, and daily needs.[6]

18  Defendant's argument that charitable organizations are not "victims" entitled to

19  mandatory restitution relies on *United States v. Follet*,[7] where a counseling facility

20  provided free care, so the costs of counseling were not "incurred" by the victim.  In

21

22  [2] Dkt. 866-1.

   [3] Dkt. 601.

23  [4] Because the record is unclear whether Hagar continued to be the legal guardian

24  after N.T.D. and I.T. were reintegrated in 2010, the Court has awarded restitution only
   through 2010.

25  [5] *See United States v. Tsosie*, 639 F.3d 1213, 1220 (9th Cir. 2011).

26  [6] *See* Dkt. 329, Ex. D (explaining reasons for Hagar care for I.T. and N.T.D.); Dkt.
   506 at 3, 17–20 (hearing testimony); Dkt. 355 (Brewster Decl. explaining AIM's legal

27  guardianship over victims).

   [7] *United States v. Follet*, 269 F.3d 996 (9th Cir. 2001).

28

3

*United States v. Tsosie*, the Circuit distinguished *Follet* based on § 2248(c)'s definition of "victim," which includes "legal guardian"; it held that "the purpose of the definition's reference to 'legal guardians' is to permit restitution of costs that legal guardians of minor victims, acting in their capacity as legal guardian, incurred as a result of the offense."[8]

### B. Defendant's Offenses Caused the Need for Third-Party Care

As the legal guardians of these minor victims for a period after Defendant's offenses, Hagar and AIM are entitled to restitution for costs incurred that were proximately caused by those offenses. The causation requirement has a "broad restitutionary purpose" to require defendants to pay the "full amount of the victim's losses" as determined by the court.[9] In *United States v. Paroline*, proximate cause under § 2259—a statute similar to § 2248—means "first, that the former event caused the latter, *i.e.,* actual cause or cause in fact; and second, that it is a proximate cause, *i.e.,* it has a sufficient connection to the result."[10] Defendant argues that he was not the proximate cause of the victims being forced to live at the rehabilitation centers because it was their families who sold them into the sex trade. But it was Defendant who *bought* the children in order to sexually enslave them in his house. The Court finds that:

- Defendant's offenses caused the victims severe psychological trauma;
- the victims required and received care in a rehabilitative setting due to Defendant's abuse;

---

[8] *Tsosie*, 639 F.3d at 1220.

[9] *United States v. Paroline,* 572 US 434 (2014).

[10] *Id.*

4

Case: 22-50024, 04/21/2022, ID: 12427861, DktEntry: 4, Page 7 of 25
Case 2:07-cr-00168-DSF  Document 910  Filed 04/21/22  Page 7 of 25  Page ID #:17169

Case 2:07-cr-00168-DSF  Document 906  Filed 04/18/22  Page 5 of 15  Page ID #:17135

- the victims' families could not provide the required care not only because many were complicit in the sexual abuse, but because of the victims' intense rehabilitative needs; [11]

- I.T.'s educational development, and ability to process and retain information was interrupted by the trauma she suffered from Defendant's offenses;[12] and

- having been sold to Defendant for sexual abuse and sexually abused by him, absent rehabilitation by Hagar and AIM, the victims had few options in their society but further sexual trafficking as they were labeled culturally as worthless trash "unworthy of ever having a decent spouse or good future."[13]  As the victims explained to the Court, Defendant's sexual abuse caused them to feel ashamed, worthless, and of "no value."[14]

The Court finds that the victims were in the care of Hagar and AIM because of Defendant's offenses, and these rehabilitation centers provided the victims with physical safety, basic needs, psychological healing, medical care, and a chance at a life free from further sexual abuse.

## C.  Restitution Is Appropriate for the Expenses Covered By 18 U.S.C. § 2248 for the Under-12 Victims

Under Section 2248, the Court must order Defendant to pay "the full amount of the victim's losses" which includes any costs incurred for—

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

---

[11] *See, e.g.*, Dkt. 329, Exs. D and E psychological assessments noting that I.T. and N.T.D. needed therapy in, and should remain in, the secure environment of Hagar Aftercare where they feel "settled safe, and secure" due to their level of trauma.

[12] Dkt. 506 at 12.

[13] Dkt. 355, Ex. A at 2; Dkt. 506 at 13.

[14] Dkt. 329, Exs. A, B, and G; Dkt. 506.

5

1       (C) necessary transportation, temporary housing, and child care expenses;

2       (D) lost income;

3       (E) attorneys' fees, plus any costs incurred in obtaining a civil protection order; and

4

5       (F) any other losses suffered by the victim as a proximate result of the offense.

6  18 U.S.C. § 2248(b)(3).

7       These losses must be proven by a preponderance of the evidence and the Court

8  must resolve disputes, articulating its reasons on the record.  *See* 18 U.S.C.

9  §§ 2248(b)(2), 3664; *see also Tsosie*, 639 F.3d at 1221.

10       Based on the materials submitted by the Government in 2008 and 2009, the 2009

11  restitution hearing, the materials submitted by the Government in 2022, and the 2022

12  restitution hearing, the Court finds that restitution is appropriate under 18 U.S.C. § 2248

13  for the under-12 victims K.S., S.S., S.R., and I.T for the below categories of expenses.

14       These expenses are supported by the record as a whole, including the

15  documentation provided by Hagar and AIM, the presence and presentation of each at the

16  2009 restitution hearing during which Defendant was given the opportunity to question

17  the expenses, and the further presentation by AIM and Hagar representatives at the most

18  recent restitution hearing.

19       The Court finds that AIM's methodology of dividing its overall expenses by the

20  number of girls to determine cost per girl within the rehabilitation facility is sufficient to

21  demonstrate by a preponderance of the evidence how much restitution is owed per

22  victim.

23       In *United States v. Doe*, the Ninth Circuit explained that Section 2259—a

24  restitution statute substantially similar to Section 2248—is "phrased in generous terms,

25  in order to compensate the victims of sexual abuse for the care required to address the

26  long term effects of their abuse." [15]  The *Doe* Court recognized that ascertaining and

27

       [15] *United States v. Doe*, 488 F.3d 1154, 1159 (9th Cir. 2007) (simplified).

28

Case: 22-50024, 04/21/2022, ID: 12427861, DktEntry: 4, Page 9 of 25
Case 2:07-cr-00168-DSF  Document 910  Filed 04/21/22  Page 9 of 25  Page ID #:17171

Case 2:07-cr-00168-DSF  Document 906  Filed 04/18/22  Page 7 of 15  Page ID #:17137

1   estimating loss in sexual abuse cases does not require "mathematical precision," and a

2   defendant who commits offenses abroad, "not only gets the windfall of paying only

3   reduced developing-world rates, but the government is also hindered in its ability to

4   investigate his remote activity, to locate all of the victims of his criminal conduct, and to

5   provide supervision of the children's recovery."[16]

6           1.   Psychological Care:

7           Under 18 U.S.C. § 2248(b)(3)(A), the costs associated with psychological care are

8   explicitly mandated.  The scope of these costs can be relatively expansive.[17]  Here, the

9   Court finds that each of the under-12 victims suffered severe psychological effects

10  resulting from Defendant's offenses.[18]  Hagar is entitled to restitution for psychological

11  care costs related to reintegration/family visits,[19] counseling, and cost of case manager

12  for victim I.T.,[20] and AIM is entitled to restitution for psychological care costs related to

13  asst counselor/SW, consulting psychologist, counselors, counselors/social workers,

14  counseling/therapy tools, counselor expenses (2010–2014), and social worker costs for

15

16  _____

17     [16] *Id.* 1159–62.

18     [17] *See United States v. Keith,* 754 F.2d 1388, 1393 (9th Cir. 1985) (addressing restitution against defendant convicted of assault with attempt to commit rape, stating, "[a] sentencing judge could properly find that the support and comfort of the family are important elements in the care and treatment of the psychological trauma caused by the kind of assault that resulted in Keith's conviction.").

20     [18] *See, e.g.,* Dkt. 506 (transcript of 2008 restitution hearing) at 5–14 (AIM counselor discussing psychological impact on victim T.C., Hagar counselors discussing psychological impacts on victims N.T.D. and I.T., victims speaking of their pain, AIM representative speaking of long-term impact on victims); Dkt. 329, Ex. D (high degree of trauma for victims I.T. and N.T.D.), Ex. E (assessment of counseling needs for victims I.T. and N.T.D.; Dkt. 355 & Decl. of Don Brewster (government under-seal submissions addressing the psychological needs of all of the victims).

24     [19] Dkt. 329, Ex. D (Government's 2008 submission, which includes a statement from Hagar that I.T.'s "counselor joins her on visits with her grandmother and this has assisted in building connection and trust once again" and "[r]egular ongoing contact with her grandmother alongside the support of Hagar's counseling and caregiving staff will assist her on this long road to recovery.")  As Sue Hanna explained at the March 14, 2022 restitution hearing, Hagar provided its girls with intensive counseling sessions once a week.

27     [20] Dkt. 880 (Don Brewster Decl.) at 3–4; Dkt. 880-1.

28

1  victims K.S., S.S., and S.R.[21]  In addition to trauma counseling, the victims here needed

2  the "support and comfort" of their pseudo families at the rehabilitation centers as part of

3  their "psychological treatment."[22]

4          Defendant contends that no restitution is appropriate for K.S. or N.T.D. because

5  they had been previously abused by other men.  But this fact does not prevent the Court

6  from concluding that Defendant caused *additional* trauma for which restitution is

7  appropriate.[23]  Other potential causes of trauma do not necessarily prevent a Court from

8  concluding that Defendant's crimes were a proximate cause.[24]  Even though causation

9  must be direct, it need not be exclusive.

10                 2.   Medical Expenses:

11         The trial testimony of the victims as well as that of Dr. Watson, establishes bodily

12  injury due to Defendant's offenses.[25]

13         Both Hagar and AIM provided medical care for the victims in their care.  Some

14  medical care was necessitated by the nature of Defendant's crimes, *e.g.*, repeated

15  screenings for sexually transmitted diseases, and pelvic examinations.[26]  Some was

16  necessitated by the severe psychological trauma Defendant inflicted, which can result in

17  lasting physical ailments diagnosed through routine medical check-ups.[27]  Further,

18  because the victims were living in the care centers due to the high level of psychological

19  trauma caused by Defendant, even routine medical services are "relat[ed]

20  _____

21         [21] Dkt. 880 (Don Brewster Decl.) at 3 (describing the specialized training that counselors and staff had in cognitive behavioral therapy and how to care for traumatized victims.); Dkt. 880-1.

22         [22] *Keith*, 754 F.2d at 1393.

23         [23] *United States v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999).

24         [24] *United States v. Thunderhawk*, 860 F.3d 633, 637 (8th Cir. 2017).

25         [25] For K.S. *see* RT 510–11, 513–14, PSR ¶¶ 17, 18, 20, 22; for I.T. *see* RT 286–287, 591–94, PSR ¶¶ 24–25, 28; for S.S. *see* PSR ¶¶ 32, 34; for S.R. *see* RT 397–98, PSR ¶¶ 32, 33; Dkt. 329 at 2 (government submission addressing bodily injury to S.S. and S.R.).

26         [26] Dkt. 880 (Don Brewster Decl.).

27         [27] Dkt. 880 (Don Brewster Decl.).

28

1  to . . . psychiatric, or psychological care." 18 U.S.C. § 2248(b)(3). The total amount of

2  expenses submitted is reasonable. The Ninth Circuit has affirmed restitution for

3  "quarterly medical check-ups," among other medical expenses.[28]

4      The Court, therefore, awards restitution for the medical care listed for I.T. incurred

5  by Hagar,[29] and Girls Healthcare (pre-2010)[30] listed for K.S., S.S., and S.R. incurred by

6  AIM.[31]

7            3.     <u>Educational Expenses</u>:

8      The only educational expenses sought are those incurred by Hagar on behalf of

9  victim I.T. The Court finds that I.T.'s ability to learn was significantly diminished as a

10  result of Defendant's offenses and resulting psychological trauma.[32] The Ninth Circuit

11  has held that restitution for "alternative education programs and vocational training" is

12  proper in the context of restitution for child sex abuse victims because "it was perfectly

13  reasonable for the District Court to conclude that the additional strain or trauma

14  stemming from [a defendant's] actions was a substantial factor in causing the ultimate

15

16

17

18

19

20      [28] *Doe*, 488 F.3d at 1162.

21      [29] Dkt. 866, Ex. A.

22      [30] The court is not awarding restitution for AIM healthcare expenses from 2010-2014 because the record indicates that these expenses included insurance premiums for a time period after these victims had already moved to the United States.

23      [31] Dkt. 880-1.

24      [32] *See, e.g.,* Dkt 506 (transcript from 2008 restitution hearing) at 12 (discussing

25  how trauma impacts one's ability to process and retain information and "these girls are up to five years behind their chronological age for their peers in their education"); Dkt.

26  329, Exs. D–E (discussing trauma-induced education impairment for victims N.T.D. and I.T. and the need for further psychoeducational assessments for both). As Sue Hanna

27  explained at the March 14, 2022, restitution hearing, victim I.T. had tremendous difficulty with her schoolwork following the trauma she experienced due to Defendant's

28  conduct.

loss."[33]  The Court finds that for I.T., Hagar is entitled to restitution for school fees, uniforms, transport to school, and materials.[34]

              4.   <u>Necessary Transportation and Temporary Housing:</u>

      Transportation and temporary housing are also specifically enumerated in 18 U.S.C. § 2248(b)(3)(F).  The Court finds that Hagar is entitled to restitution for the price of I.T.'s board.[35]  The Court also finds that AIM, on behalf of K.S., S.R., and S.S., is entitled to the costs associated with the girls' portion of the price of the rental facility, which, according to AIM's CEO, constituted approximately 80 percent of the overall facility rental cost.[36]

              5.   <u>Other Expenses Proximately Caused By Defendant's Abuse:</u>

      Under 18 U.S.C. § 2248(b)(3)(F), victims are also broadly entitled to restitution related to *any other losses* suffered as a proximate result of the offense.[37]  As stated above, Hagar and AIM had to care for the victims because of Defendant's offenses. They are entitled to reimbursement for the daily expenses associated with that care, which are expenses the Court finds to be reasonable.  AIM is entitled to restitution for expenses related to house moms, food (multiplied by 0.5 to account for the girls' portion of the expenses), clothing, and toiletries—all incurred after Defendant left S.S., S.R., and K.S. without homes.[38]  The Court also finds that the corresponding expenses for I.T. from Hagar—including clothes, caregiver, daily food, and soya milk—likewise are

---

[33] *Doe*, 488 F.3d at 1161–62 (internal quotation marks omitted).  *See also United States v. Hayes*, 135 F.3d 133, 138 (2d Cir. 1998) (Second Circuit holding that restitution is proper under Section 2264 (similar to Section 2248, but in a domestic violence context) for expenses incurred by the victim for her son's schooling when she was forced to move to the protection of her parent's home due to defendant's harassment).

[34] Dkt. 866, Ex. A.

[35] *Doe*, 488 F.3d at 1162.  *See also* Dkt. 866, Ex. A.

[36] Dkt. 880-1; Dkt. 880 (Don Brewster Decl.) at 4.

[37] *See Doe* at 488 F.3d at 1159; *United States v. Laney*, 189 F.3d 954, 966 (9th Cir.1999).

[38] Dkt. 490, Ex. A; Dkt. 880-1; Dkt. 880 (Don Brewster Decl.) at 4.

1  expenses incurred due to I.T. being left without a home subsequent to Defendant's

2  abuse.[39]  All of these additional expenses, "help[ed] rehabilitate the victims in

3  accordance with the restitution plan."[40]

4       In sum, the Court orders restitution for under-12 victims in the following amounts:

5  **Hagar International (I.T.): $13,188.61**

6  **AIM (K.S., S.S. and S.R.): $62,862.10**

7  **III.    Discretionary Restitution Under 18 U.S.C. § 3663**

8       The Court exercises its discretion under 18 U.S.C. § 3663 to award restitution for

9  the remaining three victims—L.K., T.C., and N.T.D.  The Court finds that each of these

10  victims was directly and proximately harmed as a result of Defendant's offenses under

11  18 U.S.C. § 2423(b).  Based on the findings listed above, the Court finds that Defendant

12  proximately caused physical and psychological harm when he bought L.K., T.C., and

13  N.T.D. and sexually enslaved them in his house.  Defendant was convicted of traveling

14  to Cambodia with the intent to sexually abuse minors and the trial testimony of these

15  victims establishes that Defendant sexually abused these three victims after his travel.

16       The Court also finds that Defendant's offenses resulted in bodily injury to these

17  three victims as required by the statute.[41]

18       In exercising its discretion to impose restitution, the Court has taken into account

19  "the financial resources of the defendant, the financial needs and earning ability of the

20  defendant and the defendant's dependents."  18 U.S.C. § 3663(a)(1)(B).  Defendant has

21  failed to establish an inability to pay and failed to submit a financial disclosure as

22  ordered.  18 U.S.C. § 3664(e).  Further, the record shows that Defendant received regular

23  payments from the DFAS for his former military service and that the government has

24

25       [39] Dkt. 490, Ex. A.  As Sue Hanna explained at the March 14, 2022 restitution
26  hearing, the Hagar girls would receive new clothes for the year during Khmer New Year.
        [40] *Doe*, 488 F.3d at 1162.

27       [41] For L.K. *see* RT 291–93, 465–71, PSR ¶¶ 37–38, 40; for N.T.D. *see* RT 295–96,
28  556–61, PSR ¶¶ 43–44, 47; for T.C. *see* RT 296–97, 534–37, PSR ¶¶ 49, 51, 53.

1   been able to garnish a portion of those funds to pay restitution in accordance with the

2   Court's 2014 order.[42]  In fact, Defendant's own submission of a recent bank statement

3   leads to the inference that even after garnishments for back child support and restitution,

4   he received monthly deposits from DFAS.  With all of his expenses cared for by the

5   Bureau of Prisons since approximately 2007, the Court finds that Defendant has the

6   ability to pay.  The definition of "victim" under 3663 contemplates recovery by legal

7   guardians and thus restitution paid to Hagar and AIM is appropriate.[43]

8         Under Section 3663(b)(2)(A), the Court finds that Hagar should receive

9   reimbursement for psychological care expenses incurred in the treatment of victim

10   N.T.D. including counseling, reintegration/family visits and cost of case manager.[44]

11         The Court also finds that AIM should receive reimbursement for psychological

12   care expenses incurred in the treatment of victims L.K. and T.C. as set forth in Exhibit 1

13   to the 2022 Declaration of Don Brewster.[45]

14         As with the under-12 victims, Defendant's sexual abuse of these three victims was

15   the direct and proximate cause of the victims' severe psychological trauma.[46]  These

16   expenses related to psychological care are appropriate and reasonable.

17         The Court therefore orders restitution for the over-12 victims in the following

18   amounts:

19   **Hagar International (N.T.D.): $1,903.21**

20

21     [42] Dkt. 329, Ex. I; Dkt. 864-1.

22     [43] 18 U.S.C. § 3663(a)(2); *see also United States v. Cliatt*, 338 F.3d 1089, 1090
(9th Cir. 2003) (holding that under the MVRA, § 3663A, "a district court properly orders

23   restitution to be paid to a third party when that party bears the cost of providing

24   necessary medical care to a victim of a covered offense who suffered bodily injury as a
result of the offense").

25     [44] Dkt. 866-1 at 5.

26     [45] Dkt. 880-1 at 3.

27     [46] Dkt. 880 (Don Brewster Decl.) (discussing psychological care program for AIM
victims); Dkt. 329, Exs. D–E (discussing psychological car for N.T.D.); Dkt. 506 at 10–
14.

28

1    **AIM (L.K. and T.C.): $12,834.09**

2    **IV.    Restitution Order**

3    **IT IS THEREFORE ORDERED** that Defendant pay restitution in the following

4    amounts:

5        1.    **Hagar International (I.T. and N.T.D.): $15,091.82**

6        2.    **AIM (K.S., S.R., S.S., L.K., and T.C.): $75, 696.19**

7        3.    Defendant shall receive credit for the restitution he has paid to date.

8        4.    Defendant has failed to establish that he lacks the ability to pay the

9    remaining restitution in full immediately.  Defendant failed to submit the mandated full

10   financial disclosures during the process of preparation of both of his Presentence

11   Investigation Reports.  In fact, he was not made available for an interview in connection

12   with the 2021 report.  At the March 23, 2022 hearing, defense counsel stated that

13   Defendant cannot access his bank account and she "believed" the power of attorney for

14   his bank account was given to his sister, who "hasn't been the most cooperative."  But

15   there was no suggestion that Defendant had made any effort to revoke the power of

16   attorney and no explanation of why Defendant was apparently able to obtain the single

17   bank statement submitted to the Court, but no other documents or information.  The

18   government submitted evidence that as of July 3, 2008 Defendant was receiving

19   $1,911.50 in military retirement pay from the Department of Defense, DFAS.

20   According to DFAS, that amount was to increase to $2,415 effective October 2008 due

21   to a change in legislation.  In addition, as of July 3, 2008, Defendant was receiving

22   $2,527 from the U.S. Department of Veteran's Affairs (VA).  A portion of the DFAS

23   payment is garnished for child support arrearages.   The government provided evidence

24   that approximately $355.37 monthly has been garnished pursuant to this Court's 2014

25   Order.   In addition, it appears that approximately $1,600 - $1,800 per month is currently

26   garnished (an increase from the $300 reported by DFAS in the July 3, 2008 letter) for

27   child support arrearages.   Although Defendant apparently claims that he receives a

28

1    significantly lesser amount per month, there is no explanation of what caused the

2    significant reduction Defendant claims.  Indeed, the amounts he receives should

3    regularly increase based on the cost of living analysis.  In fact, Defendant provides a

4    Retiree Account Statement that indicates his gross retirement pay is $3,179.00.  The

5    Statement shows a garnishment deduction of $1,941.60, for child support arrearages.

6    Defendant claims three exemptions.  Defendant provides no statement from the VA or

7    any explanation of the relationship between the retirement pay and his disability benefit

8    – or why the total monthly amount he purports to receive in 2022 is less than the total he

9    received in 2003.  He provides no explanation of what he has done with the funds not

10   subject to garnishment.  As the government notes, his daily needs have been provided by

11   the Bureau of Prisons since 2007.  Finally, the only evidence of assets Defendant

12   provides is a single bank statement.  Submission of a single statement showing monthly

13   deposits from November 1, 2021 to December 30, 2021 does not establish that there are

14   no other accounts receiving or holding Defendant's funds.  In addition, there is no

15   beginning balance shown, and the new and ending balances have been redacted

16   (apparently by Defendant's sister) – preventing the Court from determining the value of

17   the single asset Defendant has disclosed.   Defendant has failed to establish that he is

18   unable to pay the full amount of restitution immediately.

19          5.      Therefore, the Court finds Defendant is able to pay the full amount of

20   restitution and restitution is due immediately.  Defendant shall make a bona fide effort to

21   pay restitution in full as soon as practical, but no later than 30 days from the entry of the

22   Amended Judgment.  Any balance remaining after immediate payment shall be due

23   during the period of imprisonment, at a rate of $355.37 per month.  If any amount of the

24   restitution remains unpaid after Defendant is released from custody, monthly payments

25   of $355.37 shall be made during the period of supervised release.  These payments shall

26   begin 30 days after the commencement of supervision.

27

28

6.      If payment has not already been made in full, interest will accrue on the restitution amount in the manner prescribed by 18 U.S.C. § 3612.

7.      Defendant shall forward all restitution payments, by bank or cashier's check or money order payable to the "Clerk, U.S. District Court," to:

> Clerk of the Court
> United States District Court
> Central District of California
> Fiscal Department
> 255 East Temple Street, 11th Floor
> Los Angeles, California 90012

The bank or cashier's check or money order shall reference "Michael Joseph Pepe" and "Case No. 2:07-CR-168."

8.      The Court is not persuaded that Defendant has the ability to pay a fine or a contribution toward attorneys' fees in addition to restitution.  If the Court had not awarded restitution in the amount specified in this Order, it would have imposed a fine of $100,000.

9.      The Court will issue an Amended Judgment to reflect the restitution award.

IT IS SO ORDERED.


DATE April 18, 2022

_____
DALE S. FISCHER
UNITED STATES DISTRICT JUDGE

**United States District Court**
**Central District of California**

| | |
|---|---|
| **UNITED STATES OF AMERICA vs.** | **Docket No.**     CR 07-000168(C) DSF |
| **Defendant**    MICHAEL JOSEPH PEPE | **Social Security No.**   2    5    4    9 |
| akas:   None known. | (Last 4 digits) |

**CORRECTED AMENDED JUDGMENT AND PROBATION/COMMITMENT ORDER AS OF APRIL 18, 2022**

| | MONTH | DAY | YEAR |
|---|---|---|---|
| In the presence of the attorney for the government, the defendant appeared in person on this date. | 02 | 14 | 2022 |

| **COUNSEL** | Isabel Bussarakum, DFPD/Howard Shneider, DFPD/Charles C. Brown, CJA |
|---|---|
| | (Name of Counsel) |

| **PLEA** | ☐ **GUILTY,** and the court being satisfied that there is a factual basis for the plea. | ☐ **NOLO CONTENDERE** | ☒ **NOT GUILTY** |
|---|---|---|---|

| **FINDING** | There being a finding/verdict of **GUILTY,** defendant has been convicted as charged of the offense(s) of: Travel With Intent to Engage in Illicit Sexual Conduct 18 U.S.C. § 2423(b) – Counts 1 and 2; Aggravated Sexual Abuse of Child 18 U.S.C. § 2241(c) – Counts 3 and 4 of the Third Superseding Indictment. |
|---|---|

| **JUDGMENT AND PROB/ COMM ORDER** | The Court asked whether there was any reason why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Michael Joseph Pepe, is hereby committed on Counts 1, 2, 3, and 4 of the Third Superseding Indictment to the custody of the Bureau of Prisons for a term of 210 years. This term consists of 30 years on each of Counts 1 and 2 of the Third Superseding Indictment, and a term of 210 years on Counts 3 and 4, all to be served concurrently. |
|---|---|

On release from imprisonment, the defendant shall be placed on supervised release for a term of life. This term consists of a term of life on each of Counts 1, 2, 3, and 4 of the Third Superseding Indictment, all such terms to run concurrently under the following terms and conditions:

1. The defendant shall comply with the rules and regulations of the United States Probation & Pretrial Services Office and Second Amended General Order 20-04, including the conditions of probation and supervised release set forth in Section III of Second Amended General Order 20-04.

2. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from custody and at least two periodic drug tests thereafter, not to exceed eight tests per month, as directed by the Probation Officer.

3. During the period of community supervision, the defendant shall pay the special assessment and restitution in accordance with this judgment's orders pertaining to such payment.

4. The defendant shall cooperate in the collection of a DNA sample from the defendant.

Case: 22-50024, 04/21/2022, ID: 12427861, DktEntry: 4, Page 19 of 25
Case 2:07-cr-00168-DSF  Document 910  Filed 04/21/22  Page 19 of 25  Page ID #:17181

Case 2:07-cr-00168-DSF  Document 909  Filed 04/18/22  Page 2 of 8  Page ID #:17156

| USA vs. | Michael Joseph Pepe | Docket No.: | CR 07-000168(D) DSF |
|---|---|---|---|

5.     If any amount of the special assessment or restitution remains unpaid after defendant is released from custody, monthly payments of at least $355.37 shall be made during the period of supervised release.  These payments shall begin 30 days after the commencement of supervision.  If payment has not already been made in full, interest will accrue on the restitution amount in the manner prescribed by 18 U.S.C. §3612. If the defendant makes a partial payment, each payee shall receive approximately proportional payment.

6.     The defendant shall apply all monies received from income tax refunds, lottery winnings, inheritance, judgments and any other financial gains to the Court-ordered financial obligation.

7.     The defendant shall possess and use only those computers and computer-related devices, screen usernames, passwords, email accounts, and internet service providers (ISPs), social media accounts, messaging applications and cloud storage accounts, that have been disclosed to the Probation Officer upon commencement of supervision.  Any changes or additions are to be disclosed to the Probation Officer prior to the first use. Computers and computer-related devices include personal computers, internet appliances, electronic games, cellular telephones, digital storage media, and their peripheral equipment, that can access, or can be modified to access, the internet, electronic bulletin boards, and other computers.

8.     All computers, computer-related devices, and their peripheral equipment, used by the defendant shall be subject to search, seizure and computer monitoring.  This shall not apply to items used at the employment site that are maintained and monitored by the employer.

9.     The defendant shall comply with the rules and regulations of the Computer Monitoring Program. The defendant shall pay the cost of the Computer Monitoring Program.

10.    The defendant shall participate in mental health treatment, which may include evaluation and counseling, until discharged from the program by the treatment provider, with the approval of the Probation Officer.

11.    Within three days of release from prison, the defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, is employed and is a student, pursuant to the registration procedures that have been established in each jurisdiction. When registering for the first time, the defendant shall also register in the jurisdiction in which the conviction occurred if different from the defendant's jurisdiction of residence. The defendant shall provide proof of registration to the Probation Officer within 48 hours of registration.

12.    The defendant shall participate in a psychological counseling or psychiatric treatment or a sex offender treatment program, or any combination thereof as approved and directed by the Probation Officer.  The defendant shall abide by all rules, requirements, and conditions of such program, including submission to risk assessment evaluations and physiological testing, such as polygraph and Abel testing.  The defendant retains the right to invoke the Fifth Amendment. The Court authorizes the Probation Officer to disclose the Presentence Report, and any previous mental health evaluations or reports, to the treatment provider.  The treatment provider may provide information (excluding the Presentence report), to State or

USA vs.   Michael Joseph Pepe                              Docket No.:   CR 07-000168(D) DSF

local social service agencies (such as the State of California, Department of Social Service), for the purpose of the client's rehabilitation.

13.  As directed by the Probation Officer, the defendant shall pay all or part of the costs of psychological counseling or psychiatric treatment, or a sex offender treatment program, or any combination thereof to the aftercare contractor during the period of community supervision. The defendant should provide payment and proof of payment as directed by the Probation Officer.  If the defendant has no ability to pay, no payment shall be required.

14.  The defendant shall not view or possess any materials, including pictures, photographs, books, writings, drawings, videos, or video games, depicting or describing child pornography, as defined in 18 U.S.C. §2256(8), or sexually explicit conduct depicting minors, as defined at 18 U.S.C. §2256(2). This condition does not prohibit the defendant from possessing materials solely because they are necessary to, and used for, a collateral attack, nor does it prohibit the defendant from possessing materials prepared and used for the purposes of the defendant's Court-mandated sex offender treatment, when the defendant's treatment provider or the probation officer has approved of the defendant's  possession of the material in advance.

15.  The defendant shall not contact the victims by any means, including in person, by mail or electronic means, or via third parties. Further, the defendant shall remain at least 100 yards from the victims at all times.  If any contact occurs, the defendant shall immediately leave the area of contact and report the contact to the Probation Officer.

16.  The defendant shall not enter, or loiter, within 100 feet of school yards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, amusement and theme parks, or other places primarily used by persons under the age of 18, without the prior written authorization of the probation officer.

17.  The defendant shall not associate or have verbal, written, telephonic, or electronic communication with any person under the age of 18, except: (a) in the presence of the parent or legal guardian of said minor; and (b) on the condition that the defendant notify said parent or legal guardian of the defendant's conviction in the instant offense. This provision does not encompass persons under the age of 18, such as waiters, cashiers, ticket vendors, etc., with whom the defendant must interact in order to obtain ordinary and usual commercial services.

18.  The defendant shall not affiliate with, own, control, volunteer or be employed in any capacity by a business or organization that causes the defendant to regularly contact persons under the age of 18.

19.  The defendant's employment shall be approved by the Probation Officer, and any change in employment must be pre-approved by the Probation Officer.  The defendant shall submit the name and address of the proposed employer to the Probation Officer at least ten (10) days prior to any scheduled change.

20.  The defendant shall submit to a search, at any time, with or without warrant, and by any law enforcement or probation officer, of the defendant's person and any property, house,

USA vs.   Michael Joseph Pepe                         Docket No.:   CR 07-000168(D) DSF

residence, vehicle, papers, computers, cell phones, other electronic communication or data storage devices or media, email accounts, social media accounts, cloud storage accounts, effects and other areas under the defendant's control, upon reasonable suspicion concerning a violation of a condition of supervision or unlawful conduct by the defendant, or by any probation officer in the lawful discharge of the officer's supervision functions.

21. The defendant shall participate in an evaluation by a trained professional, approved by the Probation Office, to assess the defendant's risk to the community as a sex offender.  The evaluation may include physiological testing, such as polygraph and Abel testing.  The Court authorizes the Probation Officer to disclose the Presentence Report, and any previous mental health evaluations or reports, to the evaluation provider.

22. As directed by the Probation Officer, the defendant shall pay all or part of the costs of the sex offender risk evaluation to the aftercare contractor during the period of community supervision.  The defendant shall provide payment and proof of payment as directed by the Probation Officer.  If the defendant has no ability to pay, no payment shall be required.

The Court authorizes the Probation Officer to disclose the Presentence Report, and any previous mental health evaluations or reports, to the treatment provider.  The treatment provider may provide information (excluding the Presentence report), to State or local social service agencies (such as the State of California, Department of Social Service), for the purpose of the client's rehabilitation.

It is ordered that the defendant shall pay to the United States a special assessment of $400, which is due immediately. Any unpaid balance shall be due during the period of imprisonment, at the rate of not less than $25 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program.

A restitution and fine hearing was deferred with the consent of the defendant and was set for February 28, 2022.  At the request of the defendant, the hearing was continued to March 14, 2022, and an additional hearing was held on March 23, 2022.  The Court issued its Order Re: Restitution (Order) on April 18, 2022.

It is ordered that the defendant shall pay restitution in the total amount of $90,788.01 pursuant to 18 U.S.C. § 2248 for K.S., S.S.,S.R., and I.T and pursuant to 18 U.S.C. § 3663 for L.K., T.C., and N.T.D.

The amount of restitution ordered shall be paid as follows:

| Victim | Amount |
|---|---|
| Hagar International<br>on behalf of victims I.T. & N.T.D. | $15,091.82 |
| Agape International Missions (AIM)<br>for victims K.S., S.S., S.R., L.K., and T.C. | $75,696.19 |

Defendant shall receive credit for the restitution paid to date.  Defendant shall make a bona fide effort to pay restitution in full as soon as practical but no later than 30 days from the entry of this Amended Judgment.

| USA vs. | Michael Joseph Pepe | Docket No.: | CR 07-000168(D) DSF |
|---------|---------------------|-------------|---------------------|

Any unpaid balance of the restitution shall be due during the period of imprisonment at the rate of $ 355.37 per month.  If any amount of the special assessment or restitution remains unpaid after defendant is released from custody, monthly payments of at least $355.37 shall be made during the period of supervised release.  These payments shall begin 30 days after the commencement of supervision.  If payment has not already been made in full, interest will accrue on the restitution amount in the manner prescribed by 18 U.S.C. § 3612.  If the defendant makes a partial payment, each payee shall receive approximately proportional payment.

The defendant shall comply with Second Amended General Order No. 20-04.

The Court is not persuaded that defendant has the ability to pay a fine, but only because the Court has ordered restitution in the amount set forth above.

The Court recommends that the Bureau of Prisons conduct a mental health evaluation of the defendant and provide all necessary treatment.

The Court recommends to the Bureau of Prisons that defendant be designated to a BOP Care Level IV facility.

The Court advised the defendant of the right to appeal this judgment.

SENTENCING FACTORS: The sentence is based on the factors set forth in 18 U.S.C. §3553, including the applicable sentencing range set forth in the guidelines, as more particularly reflected in the court reporter's transcript.

| USA vs. | Michael Joseph Pepe | Docket No.: | CR 07-000168(D) DSF |
|---------|---------------------|-------------|---------------------|

In addition to the special conditions of supervision imposed above, it is hereby ordered that the Standard Conditions of Probation and Supervised Release within this judgment be imposed. The Court may change the conditions of supervision, reduce or extend the period of supervision, and at any time during the supervision period or within the maximum period permitted by law, may issue a warrant and revoke supervision for a violation occurring during the supervision period.

April 18, 2022
_____                    _____
Date                                         U. S. District Judge DALE S. FISCHER

It is ordered that the Clerk deliver a copy of this Judgment and Probation/Commitment Order to the U.S. Marshal or other qualified officer.

Clerk, U.S. District Court

April 18, 2022                        By    /s/ V.R. Vallery
_____                   _____
Filed Date                                  Deputy Clerk

The defendant must comply with the standard conditions that have been adopted by this court (set forth below).

## STANDARD CONDITIONS OF PROBATION AND SUPERVISED RELEASE

While the defendant is on probation or supervised release pursuant to this judgment:

1.  The defendant must not commit another federal, state, or local crime;
2.  The defendant must report to the probation office in the federal judicial district of residence within 72 hours of imposition of a sentence of probation or release from imprisonment, unless otherwise directed by the probation officer;
3.  The defendant must report to the probation office as instructed by the court or probation officer;
4.  The defendant must not knowingly leave the judicial district without first receiving the permission of the court or probation officer;
5.  The defendant must answer truthfully the inquiries of the probation officer, unless legitimately asserting his or her Fifth Amendment right against self-incrimination as to new criminal conduct;
6.  The defendant must reside at a location approved by the probation officer and must notify the probation officer at least 10 days before any anticipated change or within 72 hours of an unanticipated change in residence or persons living in defendant's residence;
7.  The defendant must permit the probation officer to contact him or her at any time at home or elsewhere and must permit confiscation of any contraband prohibited by law or the terms of supervision and observed in plain view by the probation officer;
8.  The defendant must work at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons and must notify the probation officer at least ten days before any change in employment or within 72 hours of an unanticipated change;
9.  The defendant must not knowingly associate with any persons engaged in criminal activity and must not knowingly associate with any person convicted of a felony unless granted permission to do so by the probation officer. This condition will not apply to intimate family members, unless the court has completed an individualized review and has determined that the restriction is necessary for protection of the community or rehabilitation;
10. The defendant must refrain from excessive use of alcohol and must not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
11. The defendant must notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
12. For felony cases, the defendant must not possess a firearm, ammunition, destructive device, or any other dangerous weapon;
13. The defendant must not act or enter into any agreement with a law enforcement agency to act as an informant or source without the permission of the court;
14. The defendant must follow the instructions of the probation officer to implement the orders of the court, afford adequate deterrence from criminal conduct, protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

USA vs.  Michael Joseph Pepe                                   Docket No.:    CR 07-000168(D) DSF

---

[X] The defendant must also comply with the following special conditions (set forth below).

### STATUTORY PROVISIONS PERTAINING TO PAYMENT AND COLLECTION OF FINANCIAL SANCTIONS

The defendant must pay interest on a fine or rest+itution of more than $2,500, unless the court waives interest or unless the fine or restitution is paid in full before the fifteenth (15th) day after the date of the judgment under 18 U.S.C. § 3612(f)(1). Payments may be subject to penalties for default and delinquency under 18 U.S.C. § 3612(g). Interest and penalties pertaining to restitution, however, are not applicable for offenses completed before April 24, 1996. Assessments, restitution, fines, penalties, and costs must be paid by certified check or money order made payable to "Clerk, U.S. District Court." Each certified check or money order must include the case name and number. Payments must be delivered to:

United States District Court, Central District of California
Attn: Fiscal Department
255 East Temple Street, Room 1178
Los Angeles, CA 90012

or such other address as the Court may in future direct.

If all or any portion of a fine or restitution ordered remains unpaid after the termination of supervision, the defendant must pay the balance as directed by the United States Attorney's Office. 18 U.S.C. § 3613.

The defendant must notify the United States Attorney within thirty (30) days of any change in the defendant's mailing address or residence address until all fines, restitution, costs, and special assessments are paid in full. 18 U.S.C. § 3612(b)(l)(F).

The defendant must notify the Court (through the Probation Office) and the United States Attorney of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay a fine or restitution, as required by 18 U.S.C. § 3664(k). The Court may also accept such notification from the government or the victim, and may, on its own motion or that of a party or the victim, adjust the manner of payment of a fine or restitution under 18 U.S.C. § 3664(k). See also 18 U.S.C. § 3572(d)(3) and for probation 18 U.S.C. § 3563(a)(7).

Payments will be applied in the following order:

1. Special assessments under 18 U.S.C. § 3013;
2. Restitution, in this sequence (under 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid):
   Non-federal victims (individual and corporate),
   Providers of compensation to non-federal victims,
   The United States as victim;
3. Fine;
4. Community restitution, under 18 U.S.C. § 3663(c); and
5. Other penalties and costs.

### CONDITIONS OF PROBATION AND SUPERVISED RELEASE PERTAINING TO FINANCIAL SANCTIONS

As directed by the Probation Officer, the defendant must provide to the Probation Officer: (1) a signed release authorizing credit report inquiries; (2) federal and state income tax returns or a signed release authorizing their disclosure and (3) an accurate financial statement, with supporting documentation as to all assets, income and expenses of the defendant. In addition, the defendant must not apply for any loan or open any line of credit without prior approval of the Probation Officer.

When supervision begins, and at any time thereafter upon request of the Probation Officer, the defendant must produce to the Probation and Pretrial Services Office records of all bank or investments accounts to which the defendant has access, including any business or trust accounts. Thereafter, for the term of supervision, the defendant must notify and receive approval of the Probation Office in advance of opening a new account or modifying or closing an existing one, including adding or deleting signatories; changing the account number or name, address, or other identifying information affiliated with the account; or any other modification. If the Probation Office approves the new account, modification or closing, the defendant must give the Probation Officer all related account records within 10 days of opening, modifying or closing the account. The defendant must not direct or ask anyone else to open or maintain any account on the defendant's behalf.

The defendant must not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the Probation Officer until all financial obligations imposed by the Court have been satisfied in full.

These conditions are in addition to any other conditions imposed by this judgment.

---

USA vs.   Michael Joseph Pepe                           Docket No.:   CR 07-000168(D) DSF

---

**RETURN**

I have executed the within Judgment and Commitment as follows:

Defendant delivered on _____ to _____

Defendant noted on appeal on _____

Defendant released on _____

Mandate issued on _____

Defendant's appeal determined on _____

Defendant delivered on _____ to _____

at _____

the institution designated by the Bureau of Prisons, with a certified copy of the within Judgment and Commitment.

United States Marshal

_____        By _____
Date                                         Deputy Marshal

**CERTIFICATE**

I hereby attest and certify this date that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

Clerk, U.S. District Court

_____        By _____
Filed Date                                  Deputy Clerk

---

**FOR U.S. PROBATION OFFICE USE ONLY**

Upon a finding of violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me.  I fully understand the conditions and have been provided a copy of them.

(Signed) _____           _____
               Defendant                                      Date

_____           _____
U. S. Probation Officer/Designated Witness          Date

---

CR-104 (docx 12/20)                **JUDGMENT & PROBATION/COMMITMENT ORDER**                Page **8** of **8**